The acceptance of the office of brigadier general under the Confederate States vacated the office of adjutant general of North Carolina.
 EXECUTIVE DEPARTMENT, N.C. RALEIGH, N.C. 2 March, 1863.
HON. R. M. PEARSON, Chief Justice of North Carolina:
DEAR SIR: — You are aware that the Legislature, by a joint resolution, declared the office of adjutant general vacant by reason of the incumbent's having accepted an incompatible office under the Confederate States Government, and that by a subsequent act the appointment was conferred upon the Governor.
General Martin, the present incumbent, having declared his intention of testing the legality of this action of the Legislature by an appeal to the courts, I am placed in a position rather embarrassing. To avoid the somewhat unpleasant spectacle of a lawsuit for the possession of an office, confidential in its relation to myself, and very important to the public at this time, I have concluded, with the consent of General Martin, to make a case and ask the opinion of the Supreme Court immediately thereon.
With this view I should be greatly obliged, and I have no doubt the public interest would also be subserved, if you would have the kindness to call the Court together and give its opinion upon the question. As early a day as possible is respectfully requested.
Very respectfully, your obedient servant,
Z. B. VANCE.
CASE AGREED.
At the recent session of the General Assembly the Legislature having resolved "that by reason of the acceptance by Gen. James G. Martin, adjutant general of North Carolina, of the office of brigadier general of the army of the Confederate States, the said office of adjutant general was surrendered and is declared to be vacant," and having (154) enacted, also, that the power of appointing to said office should be vested in the Governor; and his Excellency, Governor Vance, having indicated to General Martin his purpose to proceed to make an appointment thereto, it was insisted by General Martin that the office was filled, and he was the proper and lawful incumbent thereof, notwithstanding *Page 90 
the resolution aforesaid, by virtue of his election to said office by the preceding Legislature, under the act of the General Assembly, entitled "Militia," chapter 17, ratified on 20 September, 1861. Whereupon it was agreed by the Governor and General Martin to request the judges of the Supreme Court to give their opinions upon the question whether the office was vacant and the Governor might lawfully proceed to appoint thereto.
The question upon which the opinions of the judges are sought arises out of the following agreed facts:
In September, 1861, Gen. James G. Martin was duly elected by the Legislature adjutant general of the State of North Carolina, in pursuance of a statute on the subject of the State militia, ratified 20 September, 1861, accepted the office, was qualified, and entered upon the duties thereof, and has continued since to exercise the powers and perform the duties of the same.
General Martin held the rank of captain and brevet major in the army of the United States, tendered his resignation at Fort Riley, Kansas, 1 June, 1861, and by the provisions of the law of the Confederate States he became entitled to similar rank in the regular army of the Confederate States, and received and accepted the appointment therein of a captain of artillery, and at the request of the Governor of North Carolina was ordered to report to him for duty.
In May, 1862, General Martin accepted the office of brigadier general in the provisional army of the Confederate States, under the following circumstances: The appointment had been some days tendered, but not accepted, when Governor Clark received a telegram from the President, urging him to send General Martin with four regiments, then in camp near the city of Raleigh, and which had not then been mustered into the Confederate service, to Weldon.
(155) General Martin then had an interview with the Governor, and it was concluded between them that he should accept the appointment of brigadier general, in order to comply with the request of the President, but with the understanding that it was not to vacate his office of adjutant general.
In a day or two afterwards, and before the regiments moved, General Martin was ordered by General Holmes, commanding in this department, to repair with these regiments to Kinston, which he did.
He remained there some six weeks, and while there had also authority from the Governor, in his capacity of adjutant, to call out, for active service, the militia in the adjacent counties.
While the battles near Richmond were being fought, Governor Clark telegraphed the President that he thought General Martin and his brigade could be spared from the State, if he deemed it important to have *Page 91 
them; and in consequence, General Martin receiving an order from General Holmes, then below Richmond, repaired with his brigade to Drury's Bluff, on James River. The battle was over before he reached that point.
A few days after reaching Drury's Bluff, General Martin tendered his resignation as brigadier general for the purpose of returning to North Carolina to resume the discharge of the duties of adjutant general, in person. About ten days afterwards he was notified of the acceptance of his resignation. While at Drury's Bluff, by the request of Governor Clark, he also transacted business as adjutant general of the State, with the Confederate authorities in Richmond.
Upon the interposition of General Lee, and with the approbation of Governor Clark, and consent of General Martin, the resignation of General Martin and the acceptance thereof were annulled, and he was reinstated in the office of brigadier general, but has never received any pay either as brigadier general in the provisional army or captain in the regular army, and has since remained in the city of Raleigh in the discharge of the duties of Adjutant General, except when absent by the orders or assent of the Governor of the State.
At the request of his Excellency, Governor Vance, and of General Martin, the judges of the Supreme Court have heard a full argument on the questions of law presented by the facts set out in "the case agreed," and certify their opinion to be that the office of brigadier general under the Confederate States is in incompatible with the office of adjutant general under the State of North Carolina; and that, on the facts stated, "the office of adjutant general is vacant, and the Governor may lawfully proceed to appoint thereto."
It is proper to state that in giving this opinion we do not act as a Court, but merely as judges of the Court, and have treated the matter in the same light and with the same full consideration as if the case had been regularly before the Court upon a proceeding appropriate to present the question.
We were induced to take this action, and felt not only at liberty to do so, but conceived it was in some measure our duty thus to aid a coordinate department of the Government, because we were informed by his Excellency, the Governor, that the subject would in that way be relieved from all further embarrassment, and that the public interest required that it should be adjusted sooner than it could be done by the regular *Page 92 
mode of proceeding in court, particularly as the Court now holds but one term during the year. Berry v. Waddell, 31 N.C. 516, Appendix.
 R. M. PEARSON, C. J., S.C. WILL H. BATTLE, J., S.C. RALEIGH, 11 March, 1863. M. E. MANLY, J., S.C.
 Cited: McNeill v. Somers, 96 N.C. 473; Barnhill v. Thompson,122 N.C. 497.
(165)